CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 04 2009

JOHN F. CORCORAN, CLERK
BY:
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| TANYA ELLIOTT O/B/O/A.P., ) | |
| A MINOR CHILD ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 7:08-CV-00451 |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | By: Hon. Michael F. Urbanski |
| Commissioner of Social Security, ) | United States Magistrate Judge |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff Tanya Elliott ("Elliott") brought this action for review of the Commissioner of Social Security's ("Commissioner") decision denying her claim for disability insurance benefits and supplemental security income benefits under the Social Security Act (the "Act") on behalf of her son, A.P. On appeal, Elliott argues that the Commissioner erred by failing to give greater weight to the opinion of A.P.'s treating psychiatrist regarding whether or not he meets childhood Listing § 112.04, Mood Disorders, and Listing § 112.11, ADHD. Elliott further argues that the Commissioner erred in finding that A.P.'s impairments are not functionally equivalent to the Listings of Impairments. The Commissioner's decision that A.P.'s impairments did not meet, medically equal, or functionally equate to Listing §§ 112.04 or 112.11 was supported by the opinions of A.P.'s teachers, who found that A.P. had some slight and obvious problems in certain domains relevant to the ADHD listing but overall did not find that he had serious problems, and by Dr. Charles Holland, the neutral medical examiner who testified at the administrative hearings and concluded that A.P. did not meet the requirements for Listing §§ 112.04 or 112.11.

After carefully reviewing the record, the undersigned finds that the ALJ's decision is amply supported by substantial evidence and **RECOMMENDS** that the Commissioner's decision be affirmed.

## I.

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Social Security Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "'Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard.'" Id. (alteration in original) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). "Although we review the [Commissioner's] factual findings only to establish that they are supported by substantial evidence, we also must assure that his ultimate conclusions are legally correct." Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).

The court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a

2

preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). There is a three-step inquiry for determining whether a child is disabled. A child is disabled when 1) he is not engaged in substantial gainful activity, 2) he has a medical impairment or combination of impairments that is severe, and 3) the impairment "meets, medically equals, or functionally equals the Listings" in appendix 1. 20 C.F.R. § 416.924(a). "For a claimant to show that his impairment matches a Listing, it must meet *all* of the specified medical criteria." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). In order to functionally equal a listing, an impairment must be of "listing-level severity; *i.e.*, it must result in "marked" limitations in two [of six] domains of functioning or an "extreme" limitation in one domain." 20 C.F.R. § 416.926a(d). The six domains the Court considers are: "1) Acquiring and using information; 2) Attending and completing tasks; 3) Interacting and relating with others; 4) Moving about and manipulating objects; 5) Caring for yourself; and 6) Health and physical well-being." 20 C.F.R. § 416.926a(b). A limitation is "marked" when:

> [The] impairment(s) interferes seriously with [ones] ability to independently initiate, sustain, or complete activities. [Ones] day-to-day functioning may be seriously limited when [ones] impairment(s) limits only one activity or when the interactive and cumulative effects of [ones] impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.

20 C.F.R. § 416.926a(e)(2).

## II.

A.P. was born in 1996. (Administrative Record, hereinafter "R.," 14.) He claims that he is disabled because he has Attention Deficit Hyperactivity Disorder (ADHD), and is oppositional defiant and compulsive, and alleges a disability onset date of December 6, 2005.[1] (R. 191.) His claim was first rejected by the Virginia Disability Determination Service, both initially and on reconsideration. (R. 121–31.) The claim was then heard by an ALJ on October 19, 2006. The ALJ continued the hearing so that A.P.'s teacher could provide an update questionnaire to the agency. (R. 102.) A supplemental hearing was held on May 23, 2007. (R. 26.) Based on the testimony of psychologist Dr. Charles H. Holland and A.P.'s mother, the ALJ denied the claim for child's supplemental security income (SSI). Specifically, the ALJ found that A.P. suffers from "attention deficit hyperactivity disorder," . . . which is "considered a "severe" impairment under the Social Security Act and Regulation." (R. 14.) However, the ALJ concluded that A.P. "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1" and that he "does not have an impairment or combination of impairments that functionally equals the Listings." (R. 16.) The Appeals Council denied A.P.'s request for review and this appeal followed. (R. 2.)

## III.

A.P. first argues that the ALJ erred by failing to fully credit Dr. Claytor's opinion that he meets Listing §§ 112.04[2] and 112.11 of Appendix 1. A.P. also argues that the ALJ erred in

---

[1] A.P. originally claimed a disability onset date of July 18, 1996, which is his date of birth (R. 191). He later amended his alleged onset of disability to December 6, 2005 (R. 87).

[2] Currently, Mood Disorders are classified as 112.03 under the Mental Disorders Listings for children. 20 C.F.R. Pt. 404, Subpt. P, App. 1. Prior to February 2, 2009, and at both the time that the ALJ made his decision and the time that Plaintiff filed this claim, Mood Disorders were classified as 112.04 under the Mental Disorders Listing. 73 Fed. Reg. 31,027 (May 30, 2008)

finding that his impairments are not functionally equivalent to the impairment listings.

## A.

A.P. was diagnosed with ADHD at the age of six, and has been seen by mental health professionals since that time. (R. 412, 369.) A.P. first began seeing Sharon Brammer, LPC, RPT, of Broadway Associates on January 16, 2003, and saw her at least through February, 2006. (R. 369.) He initially saw Ms. Brammer once each week. (R. 368.) These visits were extended to once every two weeks beginning on February 5, 2004, and were extended to once every month in November of 2004. (R. 365, 343.) The visits lasted between forty-five and fifty minutes. (R. 333–68.) The symptoms for which Ms. Brammer saw the Plaintiff included hyperactivity, aggression, and impulsivity. (R. 369.) In a mental status evaluation form dated April 3, 2006, Ms. Brammer noted that A.P.'s hyperactivity is moderated with medication, but that his aggression and impulsivity are continuous. (R. 369.) Throughout the time that she spent as A.P.'s counselor, she repeatedly noted that his behavior deteriorated with the prospect of his mother's boyfriend's return to the home from jail and his presence there. (R. 333, 335–42, 344, 347–49, 353, 357–59, 361, 363, 366–68.)

In February, 2006, Ms. Brammer referred A.P. to the Roanoke League of Therapists (RLT), which provided in-home services from March 10, 2006 until September, 2006. (R. 333, 403.) RLT provided weekly in-home therapy sessions to A.P.'s mother and sister for one to two hours each, weekly in-home therapy sessions to A.P. for three to six hours, and site visits to the Plaintiff's daycare as needed. (R. 403.) In a quarterly review dated June 10, 2006, RLT therapist Adrien Monti, MSW, noted that A.P. continued to "exhibit a great deal of impulsivity" and "demonstrate low frustration tolerance." (R. 403.) Ms. Monti did note, however, that A.P.

(codified at 20 C.F.R. pt. 404). In order to maintain continuity with the filings in this case, the Court will continue to refer to Mood Disorders as classified as 112.04.

had made some progress in school and daycare with regard to his impulsivity, social conflicts, and low frustration tolerance, although she further noted that he had made little progress at home. (R. 403.) Later in her report, Ms. Monti remarked that A.P. "has done very well in school behaviorally, as evidenced by positive reports from his homeroom teacher . . . ." (R. 404.) Ms. Monti also noted that A.P.'s mother was under a great deal of stress, which is not conducive to creating an environment that is calm and stable. (R. 403.)

Dr. Claytor was A.P.'s treating psychiatrist and saw him from February 26, 2004 at least until March 15, 2006. (R. 377–90.) After his initial assessment, which lasted one hour, Dr. Claytor saw A.P. approximately once every two to three months, for periods of twenty or thirty minutes each time. (R. 377–90.) Dr. Claytor prescribed A.P. Strattera for ADHD and Zoloft for depression. (R. 422.) A.P. was taking these medications at the time his claim was filed with the Social Security Administration. (R. 193.) On July 24, 2006, Dr. Claytor gave a written assessment of A.P.'s condition in order to assist A.P.'s attorney for purposes of filing a claim for SSI. (R. 417.) In his assessment, Dr. Claytor stated that A.P. met the listing for Mood Disorders. (R. 417.) He specified that the plaintiff met the criteria of Mood Disorder Listing § 112.04, because of "depression, depressed mood, anhedonia, psychomotor agitation, feelings of guilt/worthlessness, decreased concentration . . . that impair social and academic functioning." (R. 418.) Dr. Claytor found that A.P. met the criteria for Attention Deficit Hyperactivity Disorder Listing §112.11 because of "clusters of hyperactivity, impulsivity and distractibility evident for more than six months which impairs social and academic functioning." (R. 418.) Dr. Claytor found marked functional limitations in four areas: Cognitive/communicative, social, personal, and concentration, persistence, or pace.

6

On January 16, 2006, Rebecca Swanson, A.P.'s fourth grade teacher at Fallon Park Elementary School, completed a Teacher Questionnaire. (R. 198.) She was A.P.'s teacher for reading, math, science, and social studies, and at the time had known A.P. for five months. (R. 198.) Ms. Swanson stated that she spent six hours a day, five days a week with A.P. (R. 198.) Ms. Swanson found that A.P. had no problems acquiring and using information, interacting and relating with others, moving about and manipulating objects, or caring for himself. (R. 199–203.) With regard to medical conditions and medication/health and physical well-being, Ms. Swanson noted that A.P. wears glasses and takes Strattera, and that "according to previous teachers' [sic] records, [A.P.]'s medication led to great improvement with academic achievement." (R. 204.) Ms. Swanson noted that A.P. had problems with regard to attending and completing tasks. (R. 200.) She specified that A.P. had a serious problem focusing long enough to finish an assigned activity or task and working at a reasonable pace or finishing on time. (R. 200.) She stated that A.P. had an obvious problem paying attention when spoken to directly, refocusing to task when necessary, carrying out multi-step instructions, completing class/homework assignments, completing work accurately without careless mistakes, and working without distracting himself or others. (R. 200.) Finally, she specified that A.P. had a slight problem sustaining attention during play/sports activities, carrying out single-step instructions, waiting to take turns, changing from one activity to another without being disruptive, and organizing his own things or school materials. (R. 200.) Ms. Swanson wrote that "[d]uring school [A.P.] has a difficult time staying focused on his work. He usually needs extra time to complete assignments. He needs to be redirected constantly to get a task finished." (R. 200.)

Dr. Holland testified as a neutral medical expert at A.P.'s administrative hearings. At the first hearing, held on October 19, 2006, Dr. Holland, testified that "overall, the record is not supportive of a mental impairment listing." (R. 91.) He specifically pointed to the fact that Ms. Monti, of the RLT, had noticed improvement in school, as well as A.P.'s B grade average. (R. 91.) Dr. Holland found that "the medical record clearly supports the A criteria of ADHD diagnosis, 112.11 Mental Impairment Listing, since February of [20]04, although the symptoms are significantly ameliorated with medication." (R. 55, 90.) Dr. Holland further found that "[t]he B criteria, functional equivalence criteria, are not met, however, and the record indicates overall that claimant's symptomatology is improving. More, moreover, there is clear evidence that the behavioral symptomatology is directly related to the presence or absence of his [mother's boyfriend] in the home." (R. 90–91.) He determined that impairments in age appropriate cognitive functioning, age appropriate social functioning, and age appropriate personal functioning were not found in the record. (R. 94.) He determined that difficulties in maintaining attention, concentration, persistence, or pace were found even when A.P. was taking appropriate medication, and therefore concluded that there was marked impairment in this factor. (R. 94–95.) Thus, because the regulations require a marked impairment in two out of the four factors, and Dr. Holland only noted a marked impairment in one factor, he concluded that A.P. did not meet the listing for ADHD.

Dr. Holland then considered whether A.P.'s condition was functionally equivalent to the ADHD listing, by considering the six domains. He pointed out that A.P.'s fourth grade teacher, Ms. Swanson, had found a problem only in Domain Two, Attending and Completing Tasks. (R. 91.) He found no limitation in Domains One (Acquiring and Using Information), Four (Moving About and Manipulating Objects), or Six (Health and Physical Well-Being). (R. 95–96.) He

8

found a less than marked limitation in Domains Three (Ability to Interact and Relate With Others) and Five (Ability to Care for Himself). (R. 96.) Functional equivalence for a childhood disability requires that there be marked limitations in two of the six domains or extreme limitations in one of the domains. Because A.P. did not meet this requirement, Dr. Holland found that his impairments were not functionally equivalent to the ADHD listing. (R. 96.) In explaining his conclusion, he noted that he disagreed with A.P.'s treating psychiatrist, Dr. Claytor. (R. 97–98.) He also noted that he based his conclusion largely on the teacher questionnaire because she spent a great deal of time with A.P. (R. 98.) Because this teacher questionnaire had been completed nine months earlier, the ALJ continued the hearing until an updated questionnaire could be produced. (R. 98–99.)

On October 30, 2006, Julie Alexander, A.P.'s fifth grade teacher at Fallon Park Elementary School, completed a Teacher Questionnaire in order to update A.P.'s records. (R. 266.) Ms. Alexander was A.P.'s teacher for reading, writing, and science, and at the time had known him for two months. (R. 266.) She spent four hours a day, five days a week, with him. (R. 266.) Ms. Alexander found that A.P. had no problems interacting and relating with others, moving about and manipulating objects, or caring for himself. (R. 269–71.) She stated that she had not observed any chronic conditions, and did not know whether A.P. took any medications. (R. 272.)

Ms. Alexander found that A.P. had no serious or very serious problems in any domains. In four domains, Ms. Alexander noted no problems. She noted problems in only two domains. First, she found that A.P. had slight problems in seven out of the ten areas reflected in Domain One, acquiring and using information. (R. 267.) She found that A.P. had a slight problem reading and comprehending written material, comprehending and doing math problems,

9

understanding and participating in class discussions, expressing ideas in written form, learning new material, recalling and applying previously learned material, and applying problem-solving skills in class discussions. (R. 267.) She found no problem with A.P.'s ability to comprehend oral instructions, understand school and content vocabulary, or provide organized oral explanations and adequate descriptions. (R. 276.) She did not find that A.P. had an obvious problem, a serious problem, or a very serious problem with any of the listed activities. (R. 267.) Ms. Alexander stated that A.P. "is very slow at beginning tasks – [t]herefore, he sometimes does not complete classwork. He is often distracted by others, by items in his desk, and things going on around him. He has a lot of difficulty completing written assignments." (R. 267.)

Ms. Alexander also found that A.P. had problems in Domain Two, Attending and Completing Tasks; however, none of these problems rose to the serious or very serious problem levels. (R. 268.) Instead, Ms. Alexander found that A.P. met the lesser, obvious problem, level in the areas of focusing long enough to finish an assigned activity or task, carrying out multi-step instructions, working without distracting himself or others, and working at a reasonable pace/finishing on time. (R. 268.) Ms. Alexander found that A.P. only had a slight problem paying attention when spoken to directly, sustaining attention during play/sports activities, refocusing to task when necessary, carrying out single-step instructions, changing from one activity to another without being disruptive, organizing his own things or school materials, completing calls/homework assignments, and completing work accurately without careless mistakes. (R. 268.) She found that A.P. has no problem waiting to take turns. (R. 268.) It is worth emphasizing that that Ms. Alexander did not consider A.P. to have either a serious problem or a very serious problem with any of the activities listed in the Attending and Completing Tasks domain. (R. 286.)

On April 19, 2007, Ms. Alexander submitted a second Teacher Questionnaire for A.P. (R. 312.) In this questionnaire, Ms. Alexander again found that A.P. had problems in Domains One and Two, Acquiring and Using Information and Attending and Completing Tasks. (R. 313–14.) In the area of Acquiring and Using Information, (Domain One), Ms. Alexander noted four obvious problem areas, five slight problem areas, and one no problem area. (R. 313.) No areas were noted to be in the serious problem or very serious problem categories. (R. 313.) As regards Attending and Completing Tasks, Ms. Alexander again found no areas of a serious or very serious problem. (R. 314.) Five obvious problem areas were noted, along with six slight problem areas and two areas of no problem. (R. 314.) She stated that A.P. "needs repeated direction – [h]is written language skills are not fluent and consistent," and that he "takes a long time to complete activities due to distractibility." (R. 313–14.) In her second questionnaire, however, Ms. Alexander also found that A.P. had problems in Domain Three, Interacting and Relating With Others. (R. 315.) Out of the thirteen categories, Ms. Alexander noted no problems in five areas, slight problems in seven areas, and an obvious problem in only one area, expressing anger appropriately. (R. 315.) She noted that she had to implement behavior modification strategies for A.P., specifically a "[s]imple plan to reinforce appropriate behavior – student earns tickets for appropriate behavior which can be exchanged for rewards every other week." (R. 315.) She also stated that A.P. "often blames classmates for his behavior. He has been caught stealing and cheating on several occasions." (R. 315.) Ms. Alexander noted some areas where A.P. had slight problems caring for himself in her second questionnaire, which was a departure from her first assessment. (R. 317.) She noted that A.P. "seeks a lot of attention and reinforcement." (R. 317.)

A second administrative hearing was held on May 23, 2007. Dr. Holland again testified as a medical expert, and had examined the new questionnaires completed by Ms. Alexander as well as A.P.'s school records. (R. 27.) He stated that his opinion had not changed since the prior hearing. (R. 28.) He stated that, of the "A" criteria for the ADHD Listing, the only factor which he could testify was clearly marked was the impulsiveness criterion. (R. 30.) Although he found that there was some inattentiveness and hyperactivity in the record, these were problems that were only obvious and not serious. (R. 30–31.)

Dr. Holland noted that he relied more on A.P.'s teachers' opinions than on Dr. Claytor's opinions because his teachers spent much more time with A.P. (R. 31.) He also pointed out some inconsistencies in Dr. Claytor's opinions which made them less reliable. For instance, Dr. Claytor "stated that [A.P.] met a 11204 listing, depression, but in [August of 2006], one month later, depression was only a rule out diagnosis NOS, which means even if it's there you can't say he's major depression . . . ." (R. 31–32.) He pointed out that Dr. Claytor referred to A.P.'s hyperactivity as only "moderate" at one point, and that the therapists at the RLT "emphasize his impulsivity, not his inattention or his hyperactivity." (R. 32.) He concluded that his opinion was unchanged and that A.P. did not meet the disability Listing for ADHD or for any other mental impairment. (R. 32.)

With regard to functional equivalence, Dr. Holland concluded that A.P. suffers from marked impairment only in Domain Two, Attending and Completing Tasks. (R. 32–33.) He noted that Ms. Alexander found a slight problem with Domain One, Acquiring and Using Information, where Ms. Swanson had not found any problem. (R. 28.) He also noted that problems with interacting with others arose for the first time in Ms. Alexander's second questionnaire, completed in April, 2007. (R. 30.) He found no impairments in Domain Four,

12

Moving About and Manipulating Objects, and less than a marked impairment in the remaining domains (R. 32–33.) Because Dr. Holland concluded that A.P. had marked impairment in only one domain his level of impairment was not functionally equivalent to the ADHD Listing.

### IV.

A.P. first argues that the ALJ erred by failing to fully credit Dr. Claytor's opinion that Plaintiff meets Listing § 112.04, Mood Disorders, and Listing § 112.11, ADHD. A.P. points to 20 C.F.R. § 416.927(d)(2), which states that "[g]enerally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) . . . ." A.P. argues that Dr. Claytor falls within this provision because his opinions are supported by clinical diagnostic techniques and are consistent with other substantial evidence in the record. He points to certain statements by his teachers and other counselors to support his argument that he meets Listing §§ 112.04 and 112.11. After reviewing the record, the undersigned finds that substantial evidence supports the Commissioner's decision to decline to give Dr. Claytor's opinion controlling weight and his decision that A.P. does not meet the listings for ADHD or Mood Disorders.

Under 20 C.F.R. § 416.927(d), a treating source's opinion is accorded controlling weight so long as it is "not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 416.927(d). In this case, Dr. Claytor's opinions are inconsistent with other substantial evidence on the record. For instance, although Dr. Claytor stated that A.P. met the requirements for the listing for Mood Disorder, § 112.04, this issue was not regularly raised by A.P.'s counselor, Ms. Brammer, and was not noted by either of his teachers. In fact, this was contradicted by Dr. Claytor's own notes at his initial consultation with A.P. on February 26, 2004 that A.P. did "not meet the criteria for depression." (R. 393.) Because Dr. Claytor's opinion is at times

13

inconsistent with other substantial evidence in the record, there is substantial evidence to support the ALJ's decision that his opinion is not entitled to controlling weight; rather, it is simply one opinion to consider in conjunction with the rest of the evidence in the record. Thus, it was not erroneous for the Commissioner to decline to give controlling weight to Dr. Claytor opinion that A.P.'s impairments fell within Listing § 112.04.

In addition, Dr. Claytor's opinion that A.P. met the requirements for the ADHD Listing is also inconsistent with other substantial evidence. For instance, Dr. Holland testified at both ALJ hearings that A.P. did not meet the listing requirements for ADHD. (R. 31, 94.) This opinion was based largely on the questionnaires submitted by A.P.'s teachers, who spent far more time with A.P. than did Dr. Claytor. In addition, both Ms. Brammer and Ms. Monti noted improvement in A.P.'s behavior over time. Because Dr. Claytor's opinion was inconsistent with this substantial evidence, it was not erroneous for the ALJ to fail to give it controlling weight.

Consistent with his decision to not give Dr. Claytor's opinion controlling weight, it was not erroneous for the Commissioner to fail to give greater weight than he did to Dr. Claytor's opinion. While there is some evidence that A.P. suffered from depression, a mood disorder, substantial evidence supports the conclusion that A.P. does not meet the requirements of Listing § 112.04.

First, there is no evidence in the administrative record that A.P. was clinically diagnosed with depression. Second, depression or mood disorder were not impairments that A.P. claimed when he originally applied for SSI. (R. 191.) Nor did he refer to this depression as an impairment later in the application process. In his written decision, the ALJ did not specifically consider Mood Disorder or Listing § 112.04, presumably because this disability had not been raised by the claimant himself. (R. 16.) When A.P.'s mother requested a review of the ALJ's

decision, she noted only that the ALJ erred in failing to find that A.P. has a marked limitation in his ability to interact and relate with others and therefore meets the requirements for the ADHD Listing; she did not claim that A.P. also meets the listing requirements for Mood Disorder. (R. 440.)

In addition, the ALJ did not err in failing to give greater weight to Dr. Claytor's opinion that A.P. met the requirements for Listing § 112.11, ADHD. Unlike the issue of Mood Disorder, the ALJ did specifically consider whether A.P. met, medically equaled, or functionally equaled, the requirements of the ADHD Listing, § 112.11. The ALJ stated that although A.P.'s impairments are "severe," they "have not met or equaled the requirements of any listed impairment in Appendix 1, Subpart P, Regulations No. 4, at any time relative to this decision as the diagnostic, clinical, or laboratory findings were not of a severity that satisfies the criteria in section 112.11 (ADHD)." (R. 16.)

In order to meet the "A" criteria for the ADHD Listing, there must be "[m]edically documented findings of all three of the following: 1. Marked inattention; and 2. Marked impulsiveness; and 3. Marked hyperactivity." 20 C.F.R. Pt. 404, Subpt. P, App. 1. The "B" criteria is met when the claimant experiences marked impairment in two of the following: Age-appropriate cognitive/communicative function; age-appropriate social functioning; age-appropriate personal functioning; or maintaining concentration, persistence, or pace. 20 C.F.R. Pt. 404, Subpt. P, App. 1.

Dr. Claytor's opinion that A.P. met the requirements for the ADHD Listing was made on July 24, 2006. (R. 417.) There is evidence that A.P.'s symptoms improved after this date. On August 30, 2006, Dr. Claytor noted that A.P. was "doing reasonably well but unfortunately continue[d] to have explosive outbursts on a frequency of one to two times per week." (R.423.)

15

He further noted that A.P. was doing well on his medication. (R. 423.) On September 2, 2006, Lead Therapist Mark Sturdivant, Ph.D., of the RLT discharged A.P. from the program, stating that A.P. showed "enough progress for termination" by the end of the customary six-month therapy period. (R. 425.) At that time, A.P.'s Global Assessment of Functioning ("GAF") was 55, reflecting only moderate difficulty in school functioning. (R. 425.) There is evidence that A.P.'s teachers felt that his medication helped his behavior. (R. 204.) His long-term counselor, Ms. Brammer, saw progress during the time she spent with him, apparently due to his medication and self-coping techniques. (R. 335–45.) She noted that much of his poor behavior seemed to be linked to A.P.'s mother's boyfriend and the physical violence that erupted in this relationship. (R. 333, 335–42, 344, 347–49, 353, 357–59, 361, 363, 366–68.) At the time of the second administrative hearing, this person was no longer residing in the home with A.P.

The ALJ's decision is also strongly supported by the opinion of Dr. Holland, the neutral medical examiner who testified at both administrative hearings. At the first hearing, which was held on October 19, 2006, Dr. Holland found that "the medical record clearly supports the A criteria of ADHD diagnosis, 112.11 mental impairment listing, since February of [20]04, although the symptoms are significantly ameliorated with medication." (R. 55, 90.) Dr. Holland further found that "[t]he B criteria, functional equivalence criteria, are not met, however, and the record indicates overall that claimant's symptomatology is improving. More, moreover, there is clear evidence that the behavioral symptomatology is directly related to the presence or absence of his [mother's boyfriend] in the home." (R. 90–91.) He determined that impairments in age appropriate cognitive functioning, age appropriate social functioning, and age appropriate personal functioning were not found in the record. (R. 94.) He determined that difficulties in maintaining attention, concentration, persistence, or pace were found even when A.P. was taking

16

appropriate medication, and so concluded that there was marked impairment in this factor. (R. 94.) Thus, he found that A.P. did not meet the listing for ADHD, because the regulations require a marked impairment in two out of the four factors. This assessment, when combined with the opinions of A.P.'s various counselors and teachers, demonstrates that there was substantial evidence to support the ALJ's decision that A.P. does not meet or medically equal the requirements for the ADHD Listing.

A.P.'s second argument is that the ALJ erred in finding that A.P.'s impairments are not functionally equivalent to the impairment listings. A.P. argues that he has marked limitations in Domain Two, Attending and Completing Tasks, and Domain Three, Interacting and Relating With Others. The ALJ agreed that A.P. suffers from marked limitations in Domain Two. (R. 19.) In order to functionally equal a listing, however, an impairment must result in "marked" limitations in two [of six] domains of functioning or an "extreme" limitation in one domain." 20 C.F.R. § 416.926(a). A.P. argues that he has a marked impairment in Domain Three and therefore functionally equals the listing for ADHD. A.P. argues that evidence in the record supports the finding that A.P. has "more than slight problems playing cooperatively with other children; making and keeping friends; seeking attention, following rules and respecting/obeying adults." (Pl. Br. 22.) Plaintiff points to evidence of his "explosive outbursts in class, including throwing chairs, physical assaults on other children, threats of violence to other children, and his defiance in following rules and obeying his teachers and other adults." (R. 275–77, 304–07, 320–21, 333, 336, 338, 344, 351.) He also notes that he was suspended from school seven times. (R. 276–77, 295, 304–07, 321.) Nonetheless, there is substantial evidence on the record to support the ALJ's decision that A.P. has a less than marked limitation in Domain Three.

Domain Three "considers how well [a claimant] initiate[s] and sustain[s] emotional connections with others, develop[s] and use[s] the language of [his] community, cooperate[s] with others, compl[ies] with rules, respond[s] to criticism, and respect[s] and take[s] care of the possessions of others." 20 C.F.R. § 416.926a(i). The ALJ agreed that A.P. has some limitations in this area. He noted that A.P. "has slight problems when playing cooperatively with other children; making and keeping friends; seeking attention; following rules; and when respecting/obeying adults. He also has an obvious problem when expressing anger." (R. 20.) The ALJ also stated, however, that A.P. "asks permission appropriately; relates experiences; tells stories; takes turns in conversations; interpret[s] meaning of facial expressions; and uses adequate vocabulary and grammar to express thoughts/ideas." (R. 20.) There is substantial evidence on the record to support this conclusion. First, neither A.P.'s mother nor his teachers noted problems with A.P.'s ability to communicate properly. Although there is evidence that he uses baby talk at times, this appears to be limited to the home and counseling sessions with Ms. Brammer. There is evidence that A.P. plays recreational basketball and that this is something he enjoys. His mother testified that he has friends. Although his fifth grade teacher noted problems with A.P.'s ability to interact and relate with others, Dr. Holland's analysis of the responses in this domain show that they found this to be, on average, a slight problem rather than an obvious, serious, or very serious one. (R. 33.) There is evidence of discrete instances where A.P. did not interact well with others, such as one instance where he refused to cooperate with his physical education teacher despite numerous directions from her, but overall A.P.'s teachers found no more than a slight problem in this domain. (R. 33–37.) These teachers spent between four and six hours with A.P. daily over extended periods of time, and were in the best position to view his behavior and interactions with those persons outside his family, including both children his own

18

age and adults. (R. 37.) Thus, there is substantial evidence that supports the ALJ's conclusion that A.P. had only a less than marked impairment in Domain Three.

## V.

At the end of the day, it is not the province of the Court to make a disability determination. It is the Court's role to determine whether the Commissioner's decision is supported by substantial evidence, and, in this case, substantial evidence supports the ALJ's opinion. It appears that the ALJ properly considered all of the evidence in adjudicating A.P.'s claim for benefits and in determining that his impairment does not meet or functionally equal the listings for ADHD or Mood Disorder. The ALJ's decision is supported by the opinions of A.P.'s teachers, who spent four to six hours with A.P. during each school day and concluded that A.P. had some slight and obvious problems in certain domains relevant to the ADHD listing but that he did not have serious problems, and by Dr. Charles Holland, the neutral medical examiner who testified at the administrative hearings and concluded that A.P. did not meet the requirements for Listing §§ 112.04 or 112.11. Accordingly, the undersigned **RECOMMENDS** that the Court affirm the Commissioner's decision, **GRANT** the Commissioner's motion for summary judgment, and **DENY** plaintiff's motion for summary judgment.

The Clerk is directed to transmit the record in this case to Samuel G. Wilson, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as

well as to the conclusion reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

**ENTER**: This 3rd day of November, 2009.

/s/ Michael F. Urbanski
Hon. Michael F. Urbanski
United States Magistrate Judge